IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PIERRE LARKIN and MIESHEIA LARKIN ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:06-cv-0600 |
| ) | |
| ) | Judge Thomas A. Wiseman, Jr. |
| METROPOLITAN GOVERNMNET ) | |
| OF NASHVILLE-DAVIDSON ) | |
| COUNTY, TENNESSEE ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Plaintiff Pierre Larkin alleges claims of race discrimination in violation of 42 U.S.C.A. § 1981 and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101. (Doc. No. 1-1, at ¶ 5.) Plaintiff's wife Miesheia Larkin claims loss of consortium, services, and companionship "as a direct and proximate result of Metro's malicious arrest and false imprisonment of her husband." (*Id.* at ¶ 12.) On April 30, 2007, the Defendant Metropolitan Government of Nashville and Davidson County filed a motion and memorandum in support of summary judgment as a matter of law. On May 17, 2007, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment. For the reasons set forth below, the Court will GRANT Defendant's Motion for Summary Judgment (Doc. No. 17.)

**I. Statement of Facts and Procedural History**

Plaintiff Pierre Larkin filed this action against Defendant Metropolitan Police Department of Nashville. (Doc. No. 1-1, at ¶ ¶ 1-2.) Plaintiff alleges race discrimination motivated the Police Department to charge and arrest him for assault, official oppression and official misconduct, and subsequently terminate his employment. (*Id.* at ¶ 9.) According to Defendant, the Office of Professional Accountability ("OPA") investigated the Plaintiff's conduct during the arrest of a drug suspect and concluded that he had violated several departmental policies. (Doc. No. 16, at 4-5.) The OPA's findings were submitted to the Chief of Police and thereafter Plaintiff was terminated for engaging in abusive treatment of a criminal suspect. Plaintiff's termination was confirmed by an independent Administrative Law Judge and the Metropolitan Service Commission. The facts surrounding Plaintiff's termination are as

follows:

Plaintiff was employed as a full-time officer for the Metropolitan Police Department of Nashville from 2000 until March 11, 2004. (Doc. No. 1-1, at ¶ 8; Doc. No. 17, Ex. B, at ¶ 1.) On August 17, 2003, Plaintiff conducted a routine patrol outside 1906 12 Avenue North, known to him as a "drug house" with frequent illegal drug sales. (Doc. No. 17, Ex. B at ¶ 2.) Plaintiff witnessed suspect Ronald Dodson throw an object resembling drugs to the floor when he saw Plaintiff's patrol car. (*Id.*) Based on his observation, Plaintiff approached Dodson, handcuffed him, and seated him in the back seat of his patrol car. (*Id.*) Plaintiff seized the plastic bag containing the substance he believed was crack cocaine and set the bag on the roof of his squad car. (*Id.*) Plaintiff then sat in his vehicle and wrote the arrest report. (*Id.*)

According to Plaintiff, Dodson was not initially argumentative while he waited in the back seat of the patrol car, but soon after Dodson complained his handcuffs were too tight. (Doc. No. 17, Ex. B, at ¶ 11). Plaintiff removed Dodson from the car and took off his handcuffs. (*Id.*) Plaintiff alleges once he removed the handcuffs, Dodson began to argue and back away from Plaintiff. (*Id.*) Plaintiff recognized drug suspects he had previously arrested among three individuals seated on a wall in front of the "drug house." (*Id.*) Plaintiff withdrew his weapon in a "low ready" stance and directed Dodson to stop as Dodson backed towards the wall. (*Id.*) Plaintiff alleges he drew his weapon to "make an impression on Dodson" and to caution the people seated on the wall in case they carried weapons or tried to aid Dodson. (*Id.*) Plaintiff further asserts that Dodson began confronting him after he had distanced himself from Plaintiff. (*Id.*) By this time, Officer Jaime Scruggs had arrived at the scene as backup and was standing in close proximity to Plaintiff when Plaintiff handed his handgun to Officer Scruggs. (Doc. No. 17, Ex. B, at ¶ ¶ 4, 11.) Plaintiff seized Dodson and they fell to the ground. *Id.* Plaintiff struck Dodson two or three times with an open hand to allegedly stop Dodson from resisting arrest. *Id.*

Officer Scruggs contends Plaintiff verbally confronted Dodson about who was tougher and heard Dodson call Plaintiff "Superman." (Doc. No. 17, Ex. B, at ¶ 4; Doc. No. 23, Ex. A, at 28:6-10.) Officer Scruggs stated that he was positive he either heard Dodson say, "If I beat you, can I go?" to Plaintiff or Plaintiff say to Dodson, "if you beat me, you can go." (Doc. No. 17, Ex. B, at ¶ 5.) According to Officer Scruggs, Plaintiff insisted on replacing the handcuffs himself once Officer Scruggs seized Dodson who was backing away from Plaintiff. (Doc. No. 23, Ex. A, at 29:17-25.) Plaintiff took hold of the suspect,

2

gave his handgun to Officer Scruggs, and attempted to replace the handcuffs on Dodson. (*Id.*) After locking Plaintiff's weapon in the patrol car, Officer Scruggs retrieved the cocaine from the top of the patrol car since Plaintiff had not secured it. (*Id.* at 31:1-5.) Officer Scruggs alleges he saw Plaintiff over Dodson, hitting him around two times in the face or head while they were on the ground. (Doc. No. 17, Ex. B, at ¶ 5; Doc. No. 23, Ex. A, at 31:16-19.) Following the arrest and return to the station, Officer Scruggs reported his account of the incident to Lieutenant Corman. (Doc. No. 17, Ex. B, at ¶ 7.)

Officer Robert Richards alleges that in the booking room, Plaintiff told Dodson he could go free if he won a fight against Plaintiff, and that if not, Dodson would go to jail. (*Id.* at ¶ 9.) Plaintiff denies quarreling with Dodson or telling him he could go free if he beat him in a fight. (*Id.* at ¶ 12.) Officer Richards reported this account to Lieutenant Corman. (*Id.* at ¶ 9.)

Following the incident, the department conducted a preliminary investigation. (Doc. No. at ¶ 7, Doc. No. 19, Ex. A, at 116:13-25.) Lieutenant Corman and Captain Andy Garrett decommissioned Plaintiff for use of excessive force. (*Id.*) Plaintiff agrees with Lieutenant Corman that suspect Dodson had a swollen eye and abrasions on his face, but disagrees as to the cause. (Doc. No. 19, Ex. A, at 114:20-25, 115:13-15; Doc. No. 17, Ex. E, at 26-27.)

The Metropolitan Police Department's Office of Professional Accountability ("OPA") directed an internal investigation of Plaintiff's actions. (Doc. No. 27, at ¶ 8.) Detective Ruel Camacho led the investigation and testified that it is uncommon practice to remove handcuffs that are tight, rather than readjust them, and that hitting the suspect about two times when it was not required warranted the charge of abusive treatment. (Doc. No. 18, Ex. A, at 145:14-16.) Furthermore, Detective Camacho testified that the OPA found that Plaintiff withdrew his weapon and handed it to Officer Scruggs when it was against departmental policy to withdraw a weapon for a reason other than maintenance. (*Id.* at 145:20-25.) Detective Camacho also cites Plaintiff's indictment and his behavior at Dodson's arrest as the basis for OPA's finding that he violated the Civil Service rules. (Doc. No. 18, Ex. A, at 149.)

Defendant indicted, arrested, and took Plaintiff into custody. (Doc. No. 1-1, at ¶ 8). On February 8, 2005, the State of Tennessee acquitted Plaintiff of the criminal charges that had been brought against him on March 11, 2004. (Doc. No. 1-1, at ¶ 8; Doc. No. 8, at ¶ 8). On January 5, 2006, Administrative Judge Thomas G. Stovall, sitting for the Metropolitan Civil Service Commission ("Commission") in

Nashville, Tennessee, heard Plaintiff's appeal of his suspension and termination for behavior that violated the Department's General Orders and the Commission's rules. (Doc. No. 17-1, Ex. B.) On behalf of the Commission, Judge Stovall found that the Department had carried its burden of proof by a preponderance of the evidence that Plaintiff violated General Orders and rules governing abusive treatment, use of force, conduct unbecoming an employee of the Metropolitan Government and failure of good behavior reflecting discredit upon himself, the department and/or the Metropolitan Government.[1] Accordingly, Plaintiff's termination and suspension were found to be appropriate discipline and were upheld. (Doc. No. 17-1, Ex. B.)

On June 13, 2006, Plaintiff filed his complaint alleging Defendant's race discrimination in violation of 42 U.S.C.A. § 1981 and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101. (Doc. No. 1-1, at ¶ 5). He claims that the charges by Metro, his arrest and termination were "directly, proximately, and solely caused by Metro's intentional unlawful racial discrimination and animus as against Pierre Larkin and for no other reason or reasons." (*Id.* at ¶ 9.) On April 30, 2007, Defendant filed a Motion for Summary Judgment arguing there was no basis for Plaintiff's claims. (Doc. No. 17.) Plaintiff then filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment. (Doc. No. 26.)

## II. Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the nonmoving party does not sufficiently demonstrate an essential element it had the burden of showing, the moving party is entitled to summary judgment as a matter of law. See *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-538 (6th Cir. 1999). "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citations omitted).

---

[1] Of the five alleged violations of General Orders and rules, the Commission found that the Department had carried its burden as to four of the five violations and was thus justified in its discipline of Plaintiff. The Commission found that the Department failed to carry its burden that Plaintiff violated the General Order 95-19(VI)(B) Adherence to Law, which specifically prohibits employees from violating any law or ordinance, based on the fact that he was acquitted of the criminal charges against him. (Doc. No. 17-1, Ex. B, at 9.)

4

### III. Discussion

#### A. Plaintiff's Discrimination Claims Require Consideration of Discriminatory Discharge and Race Discrimination

Plaintiff's claims arise under 42 U.S.C.A. § 1981 and the Tennessee Human Rights Act. 42 U.S.C.A. § 1981 (West 2007), Tenn. Code Ann. § 4-21-101 (West 2007). Both 42 U.S.C.A. § 1981 and the THRA safeguard employees against unlawful race discrimination in the workplace. *Id.* Under 42 U.S.C.A. § 1981, all persons have equal rights to "make and enforce contracts, to sue, be parties, give evidence" and shall receive like punishments. Under Tenn. Code Ann. § 4-21-101(a)(2), no employee may be discriminated against based on race. Both Title VII and the THRA apply the same analysis for race discrimination claims since the THRA's stated purpose and intent "is to provide for execution within Tennessee of the policies embodied in the federal Civil Rights Act of 1964." *Id.*; *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Furthermore, 42 U.S.C.A. § 1981 applies the same analysis as Title VII claims regarding the elements of a prima facie case and shifting the burden of proof. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000), citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993).

A plaintiff may prove a prima facie case of race discrimination through direct evidence that the defendant intentionally discriminated against the plaintiff, or if no direct evidence exists, through indirect, circumstantial evidence. *Logan v. Denny's Inc.*, 259 F.3d 558, 566-567 (6th Cir. 2001). In order to prove a race discrimination case under 42 U.S.C.A. and the THRA based upon circumstantial evidence, the plaintiff must satisfy the three-part burden shifting standard set forth in *McDonnell Douglas*. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). First, the plaintiff must establish a prima facie case of employment race discrimination by showing that 1) he belonged to a protected class, 2) he experienced an adverse employment action by the defendant, 3) he was qualified for his position, and 4) he was replaced by a person not protected by his class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Second, if the plaintiff establishes a prima facie case of race discrimination, the burden shifts to the defendant to prove there was a legitimate, non-discriminatory reason for the action against the plaintiff. 42 U.S.C.A. § 1981; Tenn. Code Ann. § 4-21-101; *McDonnell Douglas Corp.*, 411 U.S. at 802. The defendant need not prove the nondiscriminatory basis by a preponderance of the evidence, but "bears only the burden of

5

explaining clearly the nondiscriminatory reasons for its actions." *Burdine*, 450 U.S. at 259-260. Third, a legitimate, nondiscriminatory reason for its employment action, then the burden reverts to the plaintiff to demonstrate the defendant's reason was pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804.

1. *Plaintiff Fails To Establish a Prima Facie Case of Discriminatory Discharge*

A plaintiff may prove a prima facie case of discriminatory discharge by demonstrating that 1) he is a member of a protected class, 2) he was qualified for his position, 3) he was discharged by the defendant, and 4) after being discharged, he was replaced with a similarly qualified person or his employer sought a similarly qualified replacement who was not a member of his protected class. *Suggs v. Servicemaster Educ. Food Mgmt.*, 72 F.3d 1228, 1232 (6th Cir. 1996) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

In the instant case, Defendant argues that Plaintiff has not and cannot establish a prima facie case of discriminatory discharge. (Doc. No. 24, Defendant's Mem. at 3). Defendant concedes that Plaintiff satisfied the first element since he is in a protected class as an African-American and the third element since Defendant terminated his employment. *Id.* Defendant argues, however, that Plaintiff failed to establish the second and fourth elements that he was qualified for his position and that a similarly qualified person replaced him who did not belong to his protected class. *Id.* Defendant asserts that Tenn. Code Ann. § 38-8-106(8) provides that an officer must "[h]ave a good moral character as determined by a thorough investigation conducted by the employing agency." Tenn. Code Ann. § 38-8-106(8) (West 2007). Defendant points to the police department's official internal investigation that concluded Plaintiff unlawfully assaulted a criminal suspect warranting termination, as clear proof that Plaintiff failed to continue to possess qualifications of a police officer under the statute. (Doc. No. 24, at 4, Doc. No. 17, Ex. B, at 1.) Furthermore, Defendant argues that Plaintiff failed to prove the fourth requirement that a similarly qualified person took Plaintiff's position or that Defendant sought out a similarly qualified replacement outside of Plaintiff's protected class. (Doc. No. 24, at 3.)

In response, Plaintiff contends that there is a genuine issue of material fact regarding the second and fourth requirements. (Doc. No. 26, at 4-5.) Plaintiff argues that the question of whether he was qualified for his job should be determined by a jury and that Defendant's determination that Plaintiff was not qualified as an officer was based on criminal charges for which Plaintiff was acquitted. (*Id.*) Plaintiff

6

further contends that there is a genuine issue of material fact as to whether his position was filled by a person outside of Plaintiff's protected class, stating, "the only proof in the record is that the position went unfilled." (*Id.* at 5.)

Plaintiff relies on the absence of proof, rather than actively a prima facie case of discriminatory discharge. (*Id.* at 4-5.) The OPA concluded after an investigation where Detective Camacho interviewed Plaintiff, Officer Scruggs, and the criminal suspect, that Plaintiff had violated police procedure in several ways. (Doc. No. 18, Ex. A, at 144-145.) Specifically, the OPA found that Plaintiff removed the handcuffs against proper procedure, withdrew his handgun and handed it to another officer against proper procedure, and struck the suspect more than once, also against proper procedure. (*Id.*) Based on the findings of its investigation, the OPA suspended Plaintiff for 26 days and terminated his employment, and the ALJ upheld that decision. (Doc. No. 17, Ex. B, at ¶ 7.) The OPA and the ALJ's findings show there is no genuine issue of material fact that Plaintiff was not qualified for his employment.

The court notes that, unlike the plaintiff employee in *Suggs*, Plaintiff has failed to prove that he was replaced by an equally qualified employee outside of his protected class or that Defendant sought out such an employee. 72 F.2d at 1233. Plaintiff's contention that there is a genuine issue of material fact asserts, "the only proof in the record is that the position went unfilled." (Doc. No. 26, at 5). In fact, the record clearly demonstrates that the position was not filled and that the number of police officers from March 2004 to May 2004 actually decreased. (Doc. No. 22, at ¶ 6.) According to Staff Police Chief Ronald Serpas, the computer system which fills police vacancies showed that from the time Plaintiff was fired in March 2004 to May 2004, the staff went from 46 officers to 43, even though 49 officers were needed to completely staff the department. (*Id.*) Thus, there is no genuine issue of material fact regarding the fourth element of a prima facie discriminatory discharge case.

2. *Plaintiff Cannot Establish a Prima Facie Case of Race Discrimination.*

The necessary elements of a race discrimination claim are the same as those discussed for Plaintiff's discriminatory discharge claim. Here again, and for the same reasons, Plaintiff's claim must fail for failure to prove a prima facie case.

7

### B. Plaintiff's Claim Regarding False Arrest and Malicious Prosecution

Plaintiff's claims for false arrest and malicious prosecution are before this court. (Doc. No. 1-1, at ¶ 5). Defendant asserts that it is immune to such claims pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205, providing in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of (2) …false arrest, malicious prosecution…(5) the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause….

(Doc. No. 24, at 12.)

Despite his claims in his complaint, Plaintiff's Response states, "the complaint correctly characterizes the defendant's wrongful acts and omissions as being both 'malicious' and 'false,' but that does not mean that this is a suit for malicious prosecution and/or false arrest." (Doc. No. 26, at 1.) Plaintiff apparently concedes that Defendant is immune from any claims of false arrest and malicious prosecution, even if Plaintiff later asserts, "municipal immunity has nothing whatsoever to do with it." (Doc. No. 1-1, at ¶ 5, Doc. No. 26, at 8). Accordingly, summary judgment is appropriate and this claim is dismissed.

### C. Miesheia Larkin's Loss of Consortium Claim

Plaintiff Miesheia Larkin claims loss of consortium, companionship, and services "[a]s a direct and proximate result of Metro's malicious arrest and false imprisonment of her husband." (Doc. No. 1-1, at ¶ 12). Since Plaintiff's claim of malicious arrest and false imprisonment is dismissed as discussed above, Miesheia Larkin's loss of consortium, companionship, and services claim cannot survive.

### IV. Conclusion

For the foregoing reasons, the Plaintiffs Pierre Larkin's and Miesheia Larkin's claims are without merit and the case is dismissed. An appropriate order will follow.

_____
Judge Thomas A. Wiseman, Jr.
Senior United States Court Judge